**Federal Defenders**
OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

December 21, 2018

The Honorable Judge Johnson
United States District Senior Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY  11201

RE:     United States v.  Allison Aytes 18-CR-132 (SJ)

Dear Judge Johnson:

  Allison Aytes was convicted on December 11, 2018 after a jury trial, of two counts of theft of government property in violation of 18 U.S.C. Section 641. We write seeking a judgment of acquittal on both counts under Rule 29 of the Federal Rules of Criminal Procedure and to renew the motion made at trial after the close of the government's case.

### I. Standard of Review: Rule 29

  A court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "A criminal defendant who challenges the sufficiency of evidence shoulders a heavy burden, but not an impossible one." United States v. Jones, 393 F.3d 107, 111 (2d Cir. 2004). The evidence must be sufficient to prove every element of the offense beyond a reasonable doubt. The inference of guilt must be based on evidence and must be reasonable. See United States v. Ceballos, 340 F.3d 115, 125 (2d Cir. 2003) (internal citations omitted). While the Court must respect a jury's judgment regarding credibility, conflicting testimony, and the inferences that may be drawn from evidence, a conviction based on specious inferences must be over turned. Jones, 393 F.3d at 111 (citing United States v. Samaria, 239 F.3d 228, 233 (2d Cir. 2001); United States v. Nusraty, 867 F. 2d 759, 765-67 (2d Cir. 1989)).

### II. The Government's Evidence was Insufficient to Prove that the Property in this Case Had the Requisite Value

#### A. The Government's Evidence Did Not Prove that the Resolution Plans Had Any Value to the Government

1

The defense renews its arguments, made after the government's presentation of evidence at trial, that the government has failed to prove that the property taken in this case by Ms. Aytes had any value. The property Ms. Aytes was convicted of stealing were resolution plans, or living wills belonging to the government, specifically, to the FDIC. Through the course of the testimony at trial the government failed to prove that the plans had value.

At trial the government elicited testimony from witnesses who worked at several banks about the cost price of the plans to those financial institutions. However, the testimony was clear that that estimated cost price was the cost that the banks paid to create the plans and not the value of the plans to the FDIC. Each of the bank representatives testified that they are required to make and file resolution plans by the FDIC to remain FDIC approved. The only purpose of these plans, the reason that they are generated, is to comply with this requirement. The banks do not charge the FDIC or any other government agency, money for the plans. The bank alone bears the cost of preparing these plans. Tr. 132:18-25; 248:21-249:5; 391:8-15. Therefore, all testimony about cost price, solely reflected the amount of money the banks paid for the plans and did not reflect their value to the government.

The testimony that was elicited about the value of the plans to the government centered on the purpose of the plans, to prevent the government from needing to bail out financial institutions in the wake of a future financial crisis. However, both the bank representatives and the director of the FDIC division (the Office of Complex Financial Institutions or "OCFI") responsible for reviewing the plans, Richard Delfin, testified that the plans that Ms. Aytes was convicted of taking were found "not credible" by the FDIC. Tr. 59:25; 60:1-2. These plans had deficiencies such that they could not be used by the government to resolve the financial institutions submitting them if there was a financial catastrophe. Tr. 63:1-3. The value in these plans to the government is their ability to assist in resolving the financial institutions. Tr. 35:22-25; 36:1. A "not credible" finding therefore strips the plans of their value to the government.

Finally, there was also testimony from the banks about the possible market/street value of the resolution plans. The testimony elicited from the bank witnesses was that the desirability of a potential employee would not be in their knowledge of the detailed specific information contained in the resolution plans but in their knowledge about resolution planning in general. Tr. 394: 16-25; 395:1-6. Frequently banks hired consulting firms to work on plans. The individuals working at these consulting firms had knowledge about creating plans from working on other plans, or because they were former government employees with similar experience. The Deutsche bank representative, Mr. Glehan, testified that had a potential employee approached him with a resolution plan from Deutsche Bank he would be required to report the candidate to the legal department and to the FDIC. Tr. 393:2-11. The candidate would not be hired.

**B. The Government's Evidence Was Insufficient to Prove that the Resolution Plans Had Value in Excess of 1,000 Dollars**

In order to prove that Ms. Aytes is guilty of 18 U.S.C. Section 641 the government was required to prove that the value of the property stolen exceeds 1,000 dollars. <u>United States v. Lee</u> 833 F.3d 56, 66 (2d Cir. 2016).

Even if the Court finds that the resolution plans had some value, viewing the evidence presented at trial in the light most favorable to the government, no reasonable juror could have concluded beyond a reasonable doubt that the plans had value exceeding 1,000 dollars as

2

required by the statute. When asked directly about the dollar value of the plans the director of the OCFI, Director Delfin, testified that he could not put any dollar amount on the plans Tr. 79:7; 79:10-11. Mr. Delfin's inability to estimate a value, combined with the "not credible" finding of these plans support the argument that the government failed to prove that the plans were valued at an amount that exceeds 1,000 dollars.

### III. The Government's Evidence Was Insufficient to Prove Guilty Knowledge Viewing the Evidence in the Light Most Favorable to the Government

Viewing the evidence presented at trial in the light most favorable to the government no reasonable juror could have concluded beyond a reasonable doubt that Ms. Aytes knowingly stole, embezzled or converted the plans for her own use.

Count One charged Ms. Aytes with knowingly and intentionally taking living will materials in August 2015. The evidence demonstrates that Ms. Aytes taking the plans was nothing more than an accident. Ms. Aytes worked at OCFI as Title I staff. She was permitted to view, access and print resolution plans in connection with her employment. Tr. 312:24-25; 313: 1; 357:9-13. Ms. Aytes also worked from home, or teleworked occasionally and was expected by her direct supervisor, Ms. Luk, to complete deadlines for her work on reviewing resolution plans while she teleworked. Tr. 304:15-23; 306:9-14. The physical plans that are the subject of Count 1 in this case were plans that Ms. Aytes brought home in order to complete those assignments during the time that she was still employed at the FDIC's OCFI. She did not return or shred those plans after she left her job at the OCFI because she forgot that she still had them in her possession. Ms. Aytes never sold those plans, sent them to anyone else or brought them with her for a job interview. There is no evidence to support that she ever looked at those plans subsequent to her resignation from the OCFI.

Count Two charged Ms. Aytes with knowingly and intentionally taking living will materials in September 2015 by copying them onto a thumb drive. The testimony presented at trial was that the day before Ms. Aytes left her job at the FDIC she attempted to copy nearly 1800 files from her computer onto a thumb drive. Of those nearly 1800 files six of those files were identified by the FDIC as containing sensitive living will information belonging to the FDIC. Much of those 1800 files contained Ms. Aytes's personal files to include a driver's license application, items for a rental application and her tax returns. Tr. 113:4-10. In addition, Ms. Aytes contacted the FDIC's Information Technology department for assistance in copying the files to the FDIC thumb drive she was using when she was initially unsuccessful. This is entirely inconsistent with someone intentionally copying material that they are prohibited from taking. During the defense's case Ms. Aytes testified as to how she accidentally copied the sensitive files at issue. She testified that she accidentally copied the OCFI folder by mistakenly creating a shortcut to that folder when she attempted to delete the folder. Tr. 600: 13-23; 603:5-12. The evidence also demonstrated that consistent with this explanation, in Windows, the prompt to delete a file or folder is immediately next to the prompt to create a shortcut for that file or folder. In addition, an OCFI shortcut file was found on the thumb drive. The government provided no alternative explanation for the creation of the OCFI shortcut. Similarly to Count One, there was no evidence that Ms. Aytes sold the information she accidentally took, or did anything with the files, consistent with her explanation that she did not knowingly and intentionally take them.

**IV. <u>Conclusion</u>**

  Ms. Aytes accidentally retained living will materials in her home after leaving her job at the FDIC's OCFI. The evidence produced at trial was insufficient to establish beyond a reasonable doubt that Ms. Aytes knowingly and intentionally took government property, or that that property had value that exceeded 1,000 dollars. Based on the insufficiency of the evidence presented at trial, we again move under Rule 29 of the Rules of Criminal Procedure that Ms. Aytes be acquitted of her convictions.

                Sincerely,

                <u>/s/ Amanda L. David</u>
                Amanda L. David
                Mildred M. Whalen
                Staff Attorneys
                (718) 330-1290

cc:  Assistant U.S. Attorney James McDonald (via ECF and email)