# Federal Defenders
## OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and*
*Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

May 30, 2019

The Honorable Sterling Johnson
Senior United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

### <u>U.S.A. v. Allison K. Aytes, 18 CR 132(s-1)(SJ)</u>

Your Honor:

Ms. Aytes was convicted after trial of the two remaining counts in the above-captioned superseding indictment. Those counts charge her with theft of public property, in violation of 18 U.S.C. §641. Ms. Aytes is scheduled to be sentenced on June 4, 2019, at 9:30 a.m. We respectfully request that the Court impose a sentence of probation and community service.

## I. Introduction.

Although we must accept the jury's verdict for purposes of this sentencing, we ask the Court to consider that Ms. Aytes is a woman who has worked hard ███████████████ ████████████████████ She is loved by many, and looked up to by many as a woman who strives to help others overcome hardship and succeed. She finds friends in many areas and walks of life, and inspires her friends to expand their horizons.

Ms. Aytes gained nothing by this offense and the victims lost nothing by this offense. Although the government's theory at trial was that Ms. Aytes committed the offense in an effort to find another job, it did not help her find a job. Furthermore, there is no evidence that Ms. Aytes ever tried to sell the information or dispose of the information in any way that would cause a loss to the FDIC/OCFI or the banks.

A felony conviction and sentence of probation will be sufficient, but not greater than necessary to achieve the goals of sentencing here. Ms. Aytes' felony convictions have caused her loss of reputation–she is now identified by the public at large as a convicted felon. The felony convictions will make it difficult for her to find employment for the rest of her life, next to

impossible for her to obtain any state or local employment licenses, and the felony convictions will give her a permanent criminal record.

The offense was discovered in September 2015.  The government recovered its property on October 2, 2015.  Ms. Aytes was arrested two years later on October 17, 2017, and has been under pretrial supervision since then.  There are no allegations that Ms. Aytes engaged in any criminal conduct after leaving the FDIC/OCFI in September 2015 and she has been under pretrial supervision for almost two years with no violations. Ms. Aytes, by her otherwise law-abiding behavior since 2015, has demonstrated that she will be a good candidate for a sentence of probation.  Probation is a sentence permissible under the statute and recommended by the sentencing guidelines. Community service as part of that sentence will ensure that Ms. Aytes gives back to the public she was convicted of stealing from.

## II.  The factors to consider in determining sentence.

Pursuant to the holding of *United States v. Booker*, 543 U.S. 220 (2005), the Court is now required to consider all of the sentencing factors enumerated in 18 U.S.C. §3553(a).  18 U.S.C. §3553(a) requires the Court to impose a sentence sufficient, but not greater than necessary, to comply with the sentencing purposes set forth in §3553(a)(2).

### 1.  18 U.S.C. §3553(a)(1).

Pursuant to this factor, the Court is required to consider the nature and circumstances of the offense and the history and characteristics of Ms. Aytes

#### A.  The nature and circumstances of the offense.

Ms. Aytes was convicted after trial of taking resolution plans or "living wills" from the Office of Complex Financial Institutions (OCFI), an agency of the Federal Deposit Insurance Corporation (FDIC), a self-funded federal government agency.  The jury found that Ms. Aytes had taken paper and digital copies of entire resolution plans or portions of them, and kept them after her resignation from the OCFI.  The plans were recovered by agents of the FDIC in a search of her apartment approximately two weeks later.

There was no financial loss to the FDIC or the banks in Ms. Aytes' commission of the offense.  It was committed at a time when Ms. Aytes was under great personal strain,



She resigned from her job at the OCFI on September 16, 2015, leaving the office with a thumb drive containing her personal files as well as files that

contained resolution plans.  Ms. Aytes also failed to return printed portions of resolution plans she had in her apartment.

### B.  The history and characteristics of Ms. Aytes[1].

Ms. Aytes' personal history is accurately reported in the Presentence report (PSR) at ¶¶37-61, with the exception of the corrections that we brought to the attention of the Probation Department in our response to the PSR dated May 30, 2019.

1) 

2)

---

[1] Portions of the sentencing memorandum will be filed in redacted form on ECF, given the personal nature of the information it contains.  Un-redacted copies of the sentencing memorandum will be provided to the Court, the government, and the Probation Department.



### 3) Ms. Aytes' importance in her community of family and friends.

As detailed in the letters provided as exhibit A to this submission, Ms. Aytes is respected and loved by her family, friends, and people she has met through her employment as a college professor.

Ms. Aytes' mother describes her daughter's life ███████████████████████ ███████████████████████████████████ her work helping others both when she was in school and when she was teaching, and finally, her ability "to use her own pain, her own life's journey, and her own resilience to model what is possible." She is proud of her daughter's "strength and kindness, and her willingness to remain open to what is possible for her future." She closes by telling the Court that her daughter's "presence in our family and community is valued beyond words."

Ms. Aytes' father details her kindness, her empathy, and her extraordinary work ethic ███████████████████████████████████████████ He also talks about the permanent impact these felony convictions will have on her life and her health.

Ms. Aytes' sister describes Ms. Aytes' lifelong pattern of showing kindness and concern for others. She writes about Ms. Aytes' years of volunteer work in the community, and how she even carried blankets and sleeping bags in her car for those in need in winter. ████████ ███████████████████████████████████

There are letters from Ms. Aytes' brother-in-law, her former supervisor at the Dallas FDIC office, her godmother, and family and personal friends. They all talk about what an extraordinary influence Ms. Aytes has been in their lives. They all describe Ms. Aytes as helping in specific, fundamental ways, whether making them feel comfortable and understood in stressful situations, helping them with family members who have been struck by physical or mental health problems, or proving to be a mentor to them or loved ones ████████████ ████████████████████████████████████

Finally, there are letters from Ms. Aytes' students at Bacone College, a private tribal college in Oklahoma where Ms. Aytes taught after leaving New York, until her indictment in the instant offense. One student describes Ms. Aytes' class as different from any class she ever took, and notes that Ms. Aytes helped her in both her career and her life. Another describes her

> "gift for grasping how each and every student learned and gave hem [sic] each attention in the classroom. You could always tell that she actually cared about her students. Her teaching was important not only for myself but for many, many other students I know."

Another student writes how Ms. Aytes helped him navigate the law school admissions process and helped him to enter the University of Oklahoma Law School. When he graduates, he writes he will be the first lawyer in his family. Another talks of how she wouldn't have enjoyed or completed her first year of college if not for Ms. Aytes.

All of these letters show Ms. Aytes to be a woman with a demonstrated history of hard work, care, and compassion for her family, friends, and those she meets in the world.

### 2. 18 U.S.C. §3553(a)(2).

The Court is next required to consider the following four factors in determining the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational, or vocational training, medical care, or other correctional treatment in the most effective manner.

### A. A sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.

The felony conviction, its collateral consequences, Ms. Aytes' loss of reputation as a result of that conviction, as well as the liberty limitations of a sentence of probation and community service, will reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.

In Ms. Aytes' case, she will have two felony convictions which will reflect the seriousness of the offense.  It should also be noted that the government offered Ms. Aytes a misdemeanor plea to satisfy the charges in the indictment, which is a reflection of their view of the seriousness of the offense.  Additionally, the felony convictions will promote respect for the law, demonstrating that there are consequences to employees who take public property.

In terms of a sentence of probation as just punishment, as the Supreme Court has noted that while

> "custodial sentences are qualitatively more severe than probationary sentences of equivalent terms.  Offenders on probation are nonetheless subject to several standard conditions that substantially restrict liberty. . . Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from their probation officer or the court.  They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any other person convicted of a felony, and refrain from excessive drinking.  Most probationers are also subject to individual 'special conditions' imposed by the Court."

*Gall v. United States*, 552 U.S. 38, 48 (2007)(internal citations and quotations omitted.)

Further, having two felony convictions will result in significant collateral consequences above and beyond any sentence that this Court gives Ms. Aytes.  A resident of Oklahoma with a felony conviction faces over 300 collateral consequences that provide for restrictions on employment, licensing and volunteering opportunities.  These consequences include over 180 mandatory bars from various employment positions and licensing opportunities.[2]  Among these restrictions are a mandatory bar from being a professional fundraiser, 18 Ok. St. Section 552.7; ineligibility to serve as an estate executor, 58 Ok. St. Section 102; denial of a social work license, 59 Ok. St. Section 1261.1; and ineligibility to obtain a real estate license, 59 Ok. St. Section 858-301.1.  Given Ms. Aytes' background, her family history and her propensity for helping others and volunteering, these are just a few relevant opportunities which are now completely closed off to her as a result of her convictions.  Having to start over in a new field of employment has been difficult for Ms. Aytes.  Many employment opportunities are now simply unavailable to her and will continue to be unavailable to her despite being entirely unrelated to the banking industry or employment with the federal government.  Her felony convictions will stay with her for the remainder of her life, severely impacting her ability to obtain and maintain gainful employment to support herself.  This is a significant loss to a woman who spent years working hard to further her education, going so far as to obtain her law degree, in the face of significant adversity.

A sentence of probation and community service here will provide and reflect just punishment for an offense where there was no actual or intended loss to the government and the banks, and no gain to Ms. Aytes.

---

[2] *See* https://niccc.csgjusticecenter.org/

### B.  A sentence to adequately deter criminal conduct.

This is Ms. Aytes' first offense.  She is 43 years old.  As noted above, the offense was discovered in September 2015, the government recovered its property in October 2015, and Ms. Aytes was not arrested until October 2017.  After her arrest, Ms. Aytes was placed on pretrial supervision.  Ms. Aytes has committed no crimes since the offense was discovered in 2015 and has been in complete compliance with the terms of pretrial supervision for the past two years.  There is no reason to believe Ms. Aytes will ever engage in criminal activity in the future.  If Ms. Aytes were to violate the terms of her probation, however, the sentence she faces for such a violation is any sentence originally available under the statute or recommended by the sentencing guidelines for the instant offense.

Ms. Aytes' lack of a criminal history until this offense, and the penalties she faces for any violation of probation, will make a probationary sentence sufficient to deter criminal conduct in her case.

### C.  A sentence to protect the public from any future crimes on the part of Ms. Aytes.

The penalties Ms. Aytes faces for any violation of probation will serve to protect the public as well.

### D.  A sentence to provide needed educational, vocational, or medical treatment.

Ms. Aytes has achieved higher education and has been employed for most of her adult life, so there is no need to impose an incarceratory sentence to achieve these goals.



**3. 18 U.S.C. §3553(a)(3).**

The Court must next consider the kinds of sentences available. Ms. Aytes is not subject to any mandatory sentence, so all sentencing options are available to the Court.

**4. 18 U.S.C. §3553(a)(4).**

As detailed in our response to the PSR, we disagree with the Probation Department's guideline calculation. The cost value of the resolution plans to the banks should not be considered a loss for guideline calculation purposes.

Ms. Aytes was convicted of taking OCFI documents, including resolution plans. However, Ms. Aytes did not sell or give the resolution plans to others and there was no evidence of any intent to do so. The removal of the resolution plans from the OCFI caused no financial loss to the banks or the OCFI. As noted in ¶13 of the PSR, restitution is owed to the victims for losses related to the costs of prosecution, not because Ms. Aytes' actions resulted in a monetary loss to victims.

As the Second Circuit has held "[t]here is no statutory reason why the value of certain goods for jurisdictional purposes should be the same as the value for sentencing purposes. In fact, there are good reasons why these values should be different." *United States v. Ruhe*, 191 F.3d 376, 390-391 (2d Cir. 1999). Like the statute discussed in *Ruhe*, the statute in this case, 18 U.S.C. §641, requires a determination of the value of the item taken to determine jurisdiction, i.e., whether the offense is a felony or misdemeanor. The sentencing guidelines, however, are concerned with loss to the victim. The sentencing guidelines can define loss as the value of the property, but value is merely a method of determining loss to the victim. *Id.* at 391. *See also United States v. Robie*, 166 F.3d 444, 455 (2d Cir. 1999)(finding no loss to the Postal Service for sentencing guideline calculation even though value of stolen discarded stamps was $64,000 to defendant); *United States v. Yihao Pu*, 814 F.3d 818, 826 (7ᵗʰ Cir. 2016)(finding improper substitution of $12,000,000 software development cost as intended loss, when there was no evidence that defendant intended victims to suffer $12,000,000 loss, and no evidence victims suffered any loss); *United States v. Free*, 839 F.3d 308, 323 (3ʳᵈ Cir. 2016)("We agree with the proposition that the government is not entitled to a punitive loss calculation, even in cases involving fraud, absent evidence of actual or intended pecuniary loss.") Simply put, value cannot be used as loss in guideline calculations if there was no actual or intended loss to the victim.

Ms. Aytes should therefore receive no enhancement for loss in her guideline calculation, and her guidelines should be calculated as follows:

| | |
|---|---|
| Base offense level: | 6 |
| Specific offense characteristics: | 0 |
| Adjustment for abuse of trust: | 0 |
| Adjustment for obstruction of justice: | <u>0</u> |
| Total offense level: | 6 |

8

In criminal history category I, this offense level carries a guideline range of imprisonment of 0 to 6 months.

As we argue below, Ms. Aytes is not subject to an enhancement for abuse of trust or obstruction of justice. If the Court disagrees, however, and applies those enhancements, Ms. Aytes' total offense level will rise to level 10, which carries a guideline range of imprisonment of 6 to 12 months. This guideline range is in Zone B, so home confinement can be substituted for the custodial portion of the sentence. *See* U.S.S.G. §§5B1.1(a)(2) and 5C1.1(c)(3). In Ms. Aytes' case, substitution of incarceration for home confinement would permit a sentence of probation with at least 6 months of home confinement.

Ms. Aytes should not receive an enhancement for obstruction of justice based on her testimony at trial. Under U.S.S.G. §3C1.1, the Court can enhance a defendant's offense level if she "willfully obstructed or impeded, or attempted to obstruct or impede" the investigation into her offense. It is not enough that a jury does not believe a defendant's testimony at trial and then convicts that defendant, a Court must make an independent finding "to establish a willful impediment to or obstruction of justice, or attempt to do the same, under the perjury definition." *United States v. Shonubi*, 998 F.2d 84, 88 (2d Cir. 1993). Here, Ms. Aytes' statements at trial does not constitute a willful impediment to or obstruction of justice or any such attempt. Ms. Aytes admitted to having the paper and electronic files in her possession. The jury found that she did so with the intention to convert those files for her own use and/or embezzle them. Ms. Aytes' testimony was that she didn't realize she was in possession of the files on her USB because of an accidental and unintentional transfer and that she didn't realize she had maintained the copies of the paper files she brought home to work on her assignments. The question of her intentions at the time that she was in possession of the files was the only issue at trial. Ms. Aytes' testimony that those intentions were not to embezzle or convert the files for her own use does not contradict other direct testimony presented by the government as to her state of mind. In determining whether a defendant has committed perjury, to allow for enhancement under Sentencing Guidelines for obstruction of justice, allegedly false statements should be evaluated in light most favorable to defendant. U.S.S.G. §3C1.1, Comment 1. In doing so, the sentencing judge must resolve conflicts in credibility which occur when a defendant's testimony is directly at odds with that of other witnesses and find that Ms. Aytes intentionally provided false testimony as to a material matter and that her testimony was not as a result of mistake, confusion or faulty memory. *See United States v. Thompson*, 808 F.3d 190, 194 (2d Cir. 2015).

Further, Ms. Aytes should not receive an enhancement for abuse of trust. Under U.S.S.G. §3B1.3, a two-point enhancement applies if the defendant "abused a position of public or private trust, or, used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." At the time of Ms. Aytes' employment at the OCFI, access to the living wills was not under the tight restrictions that were implemented several years after her departure. Employees could and did copy these files onto a shared drive, accessible to individuals not covered by the guidelines restricting access to files from the secure database, Documentum. While the jury determined that Ms. Aytes was able to copy files from her computer to a USB and print additional living will documents, it was not Ms. Aytes' position at

9

the OCFI that helped facilitated the commission of that offense – access to these documents was not restricted to individuals in her position of trust because they were accessible on a separate shared drive accessible to others not in her position.  Thus, the actions at issue in Ms. Aytes' case fail the two prong analysis required for a finding of this enhancement.

### 5.  18 U.S.C. §3553(a)(5).

The Court must next consider whether there are any pertinent policy statements issued by the sentencing commission that would affect Ms. Aytes' sentence.  While not a policy statement, there is a statutory mandate in 28 U.S.C. §994(j) that:

> "The Commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense. . . "

This mandate would encourage the Court to impose a sentence of probation in Ms. Aytes' case.

### 6.  18 U.S.C. §3553(a)(6).

The Court must next consider the need to avoid unwarranted sentencing disparity among defendants with similar records who have been found guilty of similar conduct. As detailed above, a sentence of probation, with or without home confinement, is a sentence recommended by the Sentencing Commission and thus a sentence that avoids unwarranted sentencing disparity.

### 7.  18 U.S.C. §3553(a)(7).

The Court next needs to determine if there are any victims in the case requiring restitution.  As noted in the Presentence report, the FDIC is requesting $26,233.82 in restitution of costs incurred related to the costs of prosecution.  We respectfully request that the Court order the Probation Department to provide defense counsel with a copy of the affidavit of loss and any itemizations provided in support of the affidavit, so we can confirm it comports with the decision in *Lagos v. United States*, 138 S.Ct 1684 (2018).

## III.  Conclusion.

For the reasons set forth above, we respectfully request that the Court impose a sentence of probation with community service.  This is a sentence sufficient, but not greater than necessary, to achieve the goals of sentencing.

Ms. Aytes respectfully requests that the sentencing proceed on June 4, 2019 as scheduled. Family and friends are traveling to the Eastern District of New York from out of state, and will face serious financial penalties if the sentencing is adjourned.

We further ask that the Court permit Ms. Aytes to leave the jurisdiction of supervision to travel for her employment.  Ms. Aytes is a currently a contractor with the International Teaching and Learning Cooperative, and routinely travels approximately one week per month as part of her employment.

If restitution is ordered, we ask that Ms. Aytes be ordered to pay restitution at a rate of 5% of her gross monthly income.

Finally, we respectfully request that the original indictment underlying the superseding indictment be dismissed with prejudice.

Respectfully submitted,


Amanda David/Mildred M. Whalen
Staff Attorneys
(718) 330-1208/1290

enc.

cc:     Assistant U.S. Attorney James McDonald, Esq. (via email and ECF)
        U.S. Probation Officer Jaime Turton (via email)
        Ms. Allison K Aytes (via email)
        ECF