

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
UNITED STATES OF AMERICA,

                                                                 18 CR 132 (SJ) (RLM)

      -against-                                 MEMORANDUM AND
                                                                  ORDER

ALLISON AYTES,

                          Defendant.
------------------------------------------------------X

APPEARANCES

RICHARD P. DONOGUE
United States Attorney
271 Cadman Plaza East
Brooklyn, NY 11201
By:   James McDonald
Attorney for the government

FEDERAL DEFENDERS OF NEW YORK
One Pierrepont Plaza
Brooklyn, NY 11201
By:   Mildred Whalen
       Amanda David
Attorneys for Defendant

JOHNSON, United States District Judge:

      Following a jury trial, defendant Allison Aytes ("Aytes" or "Defendant") was convicted on December 11, 2018 of two counts of Theft of Government property pursuant to 18 U.S.C. § 641 (Section 641). Presently, Defendant moves for a judgment of acquittal (the "Motion") under Federal

1

Rule of Criminal Procedure 29 ("Rule 29"). Based on the submissions of the parties, oral argument held on September 18, 2019, and for the reasons below, the Motion is GRANTED.

BACKGROUND

Aytes was employed by the Federal Deposit Insurance Corporation ("FDIC") as a Senior Cross Border Specialist from January of 2012 until September 16, 2015, when she resigned. In that capacity, Aytes worked with certain sensitive documents known as corporate "Living Wills" or "Resolution Plans." The Dodd-Frank Wall Street Reform Act of 2010 required any bank holding company with at least $50 billion in assets to submit these plans to the FDIC as a preventative measure against financial collapse, and also required that the plans be updated periodically. The Plans cost several million dollars apiece to create, but critical to this case is the fact that they were provided to the government free of charge.

Aytes worked both on-site and teleworked from home. As a result, she was permitted to leave the FDIC with the documents, and was provided with a computer on which she could analyze them remotely.

On September 16, 2016, Aytes resigned from the FDIC and took with her, <u>inter alia</u>, several Resolution Plans. The Plans are confidential property of the government and Aytes, in the course of her employment, signed a

2

sworn statement that she would not leave the FDIC's employ with those plans. In a special verdict form, the jury determined that Aytes had both embezzled and converted the Plans. The instant motion followed.

## DISCUSSION

"In considering [a Rule 29] motion, the Court must determine whether, 'after viewing the evidence in the light most favorable to the prosecution... any rational trier of fact could [find] the essential elements of the crime beyond a reasonable doubt.'" United States v. Choullam, No. 05CR523-LTS, 2008 WL 3861356, at *1 (S.D.N.Y. Aug. 19, 2008) (citations omitted). "A defendant challenging the sufficiency of the evidence bears a heavy burden, because the reviewing court is required to draw all permissible inferences in favor of the government and resolve all issues of credibility in favor of the jury verdict." United States v. Kozeny, 667 F.3d 122, 139 (2d Cir. 2011). "The true rule... is that a trial judge, in passing upon a motion for directed verdict of acquittal, must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt." United States v. Taylor, 464 F.2d 230, 243 (2d Cir. 1972).

In this case, Aytes was charged under Section 641. That statute, as read to the jury, states that:

> [w]hoever embezzles, steals, purloins, or knowingly converts to her use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof, shall be guilty of a crime.

The statute also provides that the thing(s) of value "means face, par, market value, or cost price, either wholesale or retail." And, in the indictment, the government charges Aytes with stealing, embezzling or converting Living Wills and a USB drive valued at least $1000 in the aggregate. The parties essentially dispute whether the Living Wills, despite costing the applicable banks millions of dollars to produce, can be valued at greater than $1000.

The Second Circuit is clear that the term "thing of value" is to be broadly interpreted, and may include intangible items. <u>United States v. Girard</u>, 601 F.2d 69, 71 (2d Cir. 1979) (collecting cases and holding analogous, <u>inter alia</u>, amusement as a "thing of value" in the context of gambling, sexual intercourse as a "thing of value" in the context of bribery, and the testimony of a witness a "thing of value" in the context of witness tampering).

4

However, it is significant that (1) the government's own witness could not ascribe a value to the Living Wills when asked on cross-examination; (2) the Living Wills indisputably cost the government nothing; and (3) they were found to be not credible under FDIC scrutiny. Moreover, there was no evidence indicating that, in departing with the Plans, Aytes deprived the government of them; she merely downloaded electronic copies thereof.

In that regard, her conduct is similar to the defendant in United States v. Collins, 56 F.3d 1416 (D.C. 1995). There, Collins was employed by the Defense Intelligence Agency ("DIA") as a civilian technical analyst. Id. at 1418. He used office equipment to elaborately pursue his hobby as a ballroom dancer. For two years, he generated newsletters for the Amateur Ballroom Dance Association ("USABDA"), an organization to which he belonged. Id. He thereafter maintained mailing lists and a dance competition calendar for USABDA on his work server, with many items also printed and copied in his office. Id. The DIA attributed at least 56,500 in-house photocopied pages to his ballroom dancing-related avocation, and he sought postage reimbursement from USABDA for 20,000 pages worth of mailings while informing the organization that the photocopies themselves were either free or donated to him. Id. at 1418, 1421. Collins was charged under Section 641 with "converting government computer time and storage,

5

as well as office supplies to make photocopies." Id. at 1418. A jury found him guilty.

On appeal, the court found that, while intangible property can be the subject of Section 641, the government failed to prove that Collins converted computer time and storage because he did not create a *"serious interference"* with the government's ownership rights to the computer. Id. at 1420 (citing RESTATEMENT (SECOND) OF TORTS § 222A.) (emphasis in original); see also United States v. Wilson, 788 F.2d 225, 228 (8th Cir. 1980) (granting a judgment of acquittal where employee of Department of Health, Education and Welfare enlisted the services of an otherwise idle secretary to type his personal documents because "the agency left [defendant] and his secretary with little or no assigned work during the period named in this count.").

Here, Aytes was found to have embezzled and made copies of the Plans, but there was no evidence that she deprived (much less "seriously") the government of anything other than the thumb drives on which they were stored. (Nor was evidence presented that she used -- in a professional capacity or otherwise – or sold or tried to sell or otherwise benefited from having the Living Wills.)

6

P-049

The jury's implicit finding that Aytes embezzled and converted things "of value of the United States" totaling $1000 is against the weight of the evidence. Accordingly, the Motion is granted.

Dated: October 25, 2019  
      Brooklyn, New York

s/Sterling Johnson, Jr.  
_____  
Sterling Johnson, Jr., U.S.D.J.